UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOANNE K. LIPSON, individually and as personal representative of the Estate of James B. Turner,<br><br>Plaintiffs,<br><br>v.<br><br>ON MARINE SERVICES COMPANY, LLC, FERRO ENGINEERING DIVISION,<br><br>Defendant. | C13-1747 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Defendant ON Marine Services Company, LLC's ("ON Marine") motions in limine, docket no. 114, and Defendant Lone Star Industries, Inc.'s ("Lone Star") motions in limine, docket no. 139-1.[1] Defendants moved to exclude or limit the testimony of three of Plaintiffs' expert witnesses: (1) Dr. William Longo, Ph.D., Plaintiffs' material science expert, (2) Dr. Carl Andrew Brodkin,

---

[1] During trial, Lone Star settled with Plaintiffs and was dismissed as a party. The Court will therefore not address Lone Star's motions in this Order except to the extent that any of Lone Star's arguments were joined by ON Marine or relate to Plaintiffs' remaining claims against ON Marine.

ORDER - 1

M.D., Plaintiffs' occupational health expert, and (3) Susan Raterman, Plaintiffs' industrial hygiene expert.  The Court previously denied the motions with respect to each expert, <u>see</u> docket nos. 243 and 250, and now enters the following Order explaining its reasoning.

**Background**

The parties are familiar with the facts of the case and they will be stated only briefly for purposes of this Order.  Plaintiff James B. Turner, along with his wife Joanne K. Lipson (collectively, "Plaintiffs"), brought suit against Defendants for Mr. Turner's alleged exposure to asbestos-containing products manufactured or distributed by Defendants.  Mr. Turner alleged that he was directly exposed to asbestos through Ferro hot tops and Ferroboard liners, asbestos-containing products manufactured by ON Marine, during Mr. Turner's employment with Bethlehem Steel from 1973 to 1976.

**Discussion**

    **A.  Standard of Review**

Under Rule 702 of the Federal Rules of Evidence, an expert witness, "qualified . . . by knowledge, skill, experience, training, or education," may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  The Court has broad discretion concerning the

ORDER - 2

1  admissibility or exclusion of expert testimony. Wood v. Stihl, Inc., 705 F.2d 1101, 1104

2  (9th Cir. 1983).

3       A trial judge has the "task of ensuring that an expert's testimony both rests on a

4  reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow

5  Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993). The party presenting the expert, the

6  Plaintiffs in this case, "must show that the expert's findings are based on sound science,

7  and this will require some objective, independent validation of the expert's

8  methodology." Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II), 43 F.3d

9  1311, 1316 (9th Cir. 1995).

10      The Court's inquiry as to relevance and reliability is subject to no set list of

11 factors. See Kumho Tire v. Carmichael, 526 U.S. 137, 141-42 (1999). "For scientific

12 opinion, the court must assess the reasoning or methodology, using as appropriate such

13 criteria as testability, publication in peer reviewed literature, and general acceptance, but

14 the inquiry is a flexible one." Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010).

15 "The district court has discretion whether to hold a Daubert hearing in determining

16 whether to admit expert testimony." Millenkamp v. Davisco Foods Int'l, Inc., 562 F.3d

17 971, 979 (9th Cir. 2009).

18      The Court's focus is on the expert's methodology, not his or her conclusion.

19 Metabolife Intern., Inc. v. Wornick, 264 F.3d 832, 841 (9th Cir. 2001). Once the Court

20 has assured itself that the expert's testimony "rests on a reliable foundation and is

21 relevant to the task at hand," its gatekeeping function is satisfied. Daubert, 509 U.S. at

22 597. Because the trial court is "a gatekeeper, not a fact finder" United States v.

23

ORDER - 3

Sandoval-Menxoza, 472 F.3d 645, 654 (9th Cir. 2006), "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion," Primiano, 598 F.3d at 564.

### B.  Dr. William Longo, Ph.D.

Defendants seek to limit the testimony of Dr. William Longo, Plaintiffs' material science expert, and to exclude Dr. Longo's video demonstrations using Tyndall lighting. The Court has reviewed the briefs and supporting materials filed by the parties, including the declaration of Dr. Longo, and finds that a Daubert hearing is unnecessary.

Defendants do not challenge Dr. Longo's qualifications as an expert, and the Court finds that he is qualified to testify.  Dr. Longo has a bachelor's degree in microbiology, a master's degree in engineering, and a doctorate degree in material science and engineering.  Declaration of William Longo, docket no. 165, at ¶ 3.

Furthermore, the Court finds that Dr. Longo's testimony will assist the jury in understanding the evidence and that Dr. Longo's opinions are relevant and reliable.  Lone Star argues that Dr. Longo should be precluded from testifying about his work practice simulations because (1) his test chamber does not replicate conditions similar to Mr. Turner's work environment, and (2) Dr. Longo uses an unreliable method of calculating asbestos dust concentrations.  Lone Star's motions in limine, docket no. 139-1, at 14.

Lone Star's first argument goes to the weight, rather than the admissibility, of Dr. Longo's testimony.  The test must be "conducted under conditions substantially similar to the actual conditions."  Champeau v. Fruehauf Corp., 814 F.2d 1271, 1278 (8th Cir. 1987).  In general, dissimilarities between testing conditions and actual conditions

ORDER - 4

1  "affect the weight of the evidence, not its admissibility."  Id.  Here, it would not be

2  possible for Dr. Longo to test release of asbestos in actual working conditions for obvious

3  reasons.  Defendants can challenge the weight of this testimony on the basis that the

4  testing chamber is dissimilar to Mr. Turner's actual working conditions.

5       With regard to methods of calculating asbestos dust concentrations, Lone Star

6  asserts that Dr. Longo's methods are unreliable.  Lone Star's motions in limine at 19.

7  However, Dr. Longo states that his opinions in this case rely only upon the widely

8  accepted NIOSH 7400 and NIOSH 7402 methods, not the "indirect" method challenged

9  by Lone Star.  Longo Decl. at ¶ 46.  The Court finds that Dr. Longo's methodologies are

10 reliable and the motion to exclude or limit the testimony of Dr. Longo is DENIED.

11      Defendants also seek to exclude any of Dr. Longo's video demonstrations using

12 Tyndall lighting, which illuminates the presence of dust.  The Court, having viewed the

13 edited video offered by Plaintiffs, finds that the video is relevant and that its probative

14 value is not substantially outweighed by the danger of undue prejudice.  Defendants

15 argue that the video should be excluded under Fed. R. Evid. 403 because it lacks

16 probative value, exaggerates the appearance of dust, and is made to inject shock value

17 that will mislead the jurors and cause unfair prejudice to Defendants.  Lone Star's

18 motions in limine at 23; ON Marine's motions in limine, docket no. 114, at 22.  The

19 video has been edited to minimize any appearance of protective gear worn by the test

20 conductor, rendering Defendants' concerns on that issue moot.  Furthermore, the video is

21 not shocking or confusing, and Defendants' arguments regarding the exaggeration of the

22 appearance of dust would be appropriate arguments in challenging the weight of the

23

ORDER - 5

video. The Court holds that the video is admissible and Defendants' motions are DENIED.

### C. Dr. Carl Andrew Brodkin, M.D

Dr. Carl Andrew Brodkin, M.D., is Plaintiffs' occupational health expert and is prepared to offer medical causation testimony in support of Plaintiffs' claims. The Court has reviewed the briefs and supporting materials filed by the parties, including the declaration of Dr. Brodkin, as well as Dr. Brodkin's deposition testimony, and finds that a <u>Daubert</u> hearing is unnecessary. The Court finds that Dr. Brodkin's testimony will assist the jury in understanding the evidence and that Dr. Brodkin's opinions are relevant and reliable.

The Court finds Dr. Brodkin to be qualified to testify as an expert on the matters addressed in his deposition. Dr. Brodkin is a licensed physician who has specialized in occupational and environmental medicine for over 20 years. Declaration of Carl Andrew Brodkin ("Brodkin Decl."), docket no. 168-1, at ¶ 2. Dr. Brodkin has a bachelor's degree in biology, a medical degree, and a master's degree in public health. Brodkin Curriculum Vitae, Brodkin Decl. Ex. A. In addition, he has completed post-graduate training in internal medicine, occupational medicine, and environmental medicine. <u>Id.</u> Dr. Brodkin has authored numerous articles relating to asbestos-exposed workers. <u>Id.</u> Furthermore, Dr. Brodkin participated as a co-investigator of the Caret Study, involved with studying a group of asbestos-exposed workers. Deposition of Dr. Brodkin on October 18, 2013 (Brodkin Dep.) at 20:1-21:11.

Defendants' primary challenge to Dr. Brodkin's testimony is that Dr. Brodkin will testify that every exposure to asbestos was a cause of Mr. Turner's injuries. Lone Star's motion in limine at 3; ON Marine's motion in limine at 9. The Court struck this motion as moot because Plaintiffs agreed that Dr. Brodkin would not present such testimony. Minute Order, docket no. 197. At oral argument, Defendants asserted that Dr. Brodkin's opinions are nevertheless an "every fiber" opinion in disguise. However, in his deposition Dr. Brodkin was specifically asked if he would testify that "exposure to one fiber increases a person's risk of getting mesothelioma," to which Dr. Brodkin replied "No. That has never been my opinion." Brodkin Dep. at 107:19-22. During trial Dr. Brodkin did not testify that exposure to every fiber of asbestos caused Mr. Turner's injury.

Dr. Brodkin does opine that each "identified exposure" was a substantial cause of Mr. Turner's injury. Dr. Brodkin states that an "identified exposure," distinct from "any exposure," requires "(1) a known source of asbestos exposure, and (2) a well-characterized activity, that (3) disrupts the source to generate airborne fibers, sufficient to overcome the body's respiratory defenses, which (4) adds to the body's burden of asbestos." Brodkin Decl. at ¶ 9. Dr. Brodkin set forth Mr. Turner's "identified exposures" to refractory cement, hot-top residue, and through laundering insulation-contaminated clothing. Id. In formulating his opinions in this case, Dr. Brodkin interviewed and examined Mr. Turner and evaluated the testimony of Mr. Turner's co-workers and family to identify and assess Mr. Turner's biologically significant "identified" exposures. Id. at ¶ 8.

ORDER - 7

Dr. Brodkin uses the Helsinki Criteria for diagnosis of asbestos-related disease. Id. at ¶ 8. The Helsinki Criteria has been published and according to Dr. Brodkin represents the "accepted evidence relied upon by physicians in [his] field," id., and Defendants have not challenged the use of that methodology. The Court is satisfied that Dr. Brodkin's opinions are based on a sound methodology and are not simply unreliable opinions equivalent to "every fiber in disguise."

At oral argument, Defendants also argued that Dr. Brodkin will testify that all exposures are cumulative even though there is no medical support for how many exposures cause mesothelioma. In his deposition, Dr. Brodkin was asked for the lowest level of exposure that has resulted in a case of mesothelioma. Brodkin Dep. at 139:19-140:15. Dr. Brodkin replied that "there isn't a bright line level" or "threshold at which I or anyone else can say one is safe or not going to develop mesothelioma below that level." Id. At oral argument, Plaintiffs' counsel argued that this "low level" issue is irrelevant to the facts of this case, because Mr. Turner was exposed to very high levels of asbestos through sustained and frequent exposure, and that there is no dispute Mr. Turner was exposed to asbestos or has an asbestos-related disease. The Court concludes that Dr. Brodkin's inability to identify a low threshold or bright line level goes to the weight, not the admissibility, of his testimony.

Defendants' final challenges to Dr. Brodkin's testimony are based on his reliance on certain non-peer reviewed materials as well as the lack of direct evidence of specific products to which Mr. Turner was exposed. Whether a reference material is peer-reviewed is one factor the Court will consider in determining reliability, but it is not

ORDER - 8

dispositive.  Moreover, Mr. Turner's exposure could be proven without direct evidence.  See Lockwood v. AC&S, Inc., 109 Wn.2d 235 (1987) (setting forth factors courts should consider when determining whether there is sufficient evidence for a jury to find causation has been established).  These arguments are appropriate topics for cross-examination of Dr. Brodkin, as they go to the weight, not the admissibility, of his testimony.

The Court holds that Dr. Brodkin is qualified to testify as an expert in this case.  Furthermore, the Court finds that Dr. Brodkin's opinions are reliable and relevant to this case.  Defendants' motion to limit or exclude the testimony of Dr. Brodkin is DENIED.

**D. Susan Raterman**

Defendants seek to limit the testimony of Susan Raterman, Plaintiffs' industrial hygiene expert.  The Court has reviewed the briefs and supporting materials filed by the parties, including the declaration of Ms. Raterman, and finds that a Daubert hearing is unnecessary.  The Court finds that Ms. Raterman's testimony will assist the jury in understanding the evidence and that Ms. Raterman's opinions are relevant and reliable.

Defendants do not challenge Ms. Raterman's qualifications as an expert, and the Court finds that she is qualified to testify.  Ms. Raterman has a bachelor's degree in biology and a master's degree in environmental health engineering.  Declaration of Susan Raterman ("Raterman Decl."), docket no. 169-1, at ¶ 3.  She is certified in the Comprehensive Practice of Industrial Hygiene and has worked as a professional industrial hygienist for thirty-four years.  Id.

Lone Star challenges Ms. Raterman's testimony on the grounds that she employed no methodology, cannot quantify Mr. Turner's exposure to asbestos, has no formula for reducing exposure levels to determine bystander levels, and has no support for her assertion that every exposure causes mesothelioma. Lone Star's motions in limine at 26-27. Ms. Raterman's methodology is to conduct a multi-step exposure assessment. See Raterman Decl. at ¶¶ 9 – 13. This methodology is generally accepted within the industrial hygiene community. Id. at ¶ 13. Ms. Raterman will not provide a quantification of Mr. Turner's exposure to asbestos and is critical of dose analysis that attempts to do so. Id. at ¶ 21. Ms. Raterman's inability to quantify Mr. Turner's dose and lack of quantifiable formula goes to the weight, not the admissibility, of Ms. Raterman's opinions. Finally, Ms. Raterman states that she will not offer opinions on medical causation and therefore Lone Star's "every exposure" concern is unfounded. See id. at ¶ 19. Lone Star's motion is DENIED.

ON Marine seeks to preclude Ms. Raterman from testifying that Mr. Turner was exposed to an asbestos-containing Ferro product at Bethlehem Steel, arguing that her opinions are based on speculation. ON Marine's motions in limine at 17. This argument goes to the weight, not the admissibility, of Ms. Raterman's testimony. Ms. Raterman's opinions are based on the testimony of Mr. Turner as well as discovery documents detailing sales of Ferro products to Bethlehem Steel. Raterman Decl. at ¶ 13. The Court

finds that Ms. Raterman's opinions are not within the realm of guesswork and speculation and therefore ON Marine's motion is DENIED.[2]

**Conclusion**

For the foregoing reasons, the Court denied Defendants' motions in limine to exclude or limit the testimony of Plaintiffs' experts Dr. William Longo, Dr. Carl Brodkin, and Ms. Susan Raterman.  See docket nos. 243 and 250.  The Court finds that Dr. Longo, Dr. Brodkin, and Ms. Raterman are qualified to testify as expert witnesses, will assist the trier of fact in understanding the evidence, and will provide relevant and reliable opinions.  Furthermore, having now heard the testimony offered by all three witnesses at trial, the Court remains satisfied that it was fully informed through the briefs and materials filed by the parties and that a Daubert hearing was not necessary in assessing the admissibility of the expert testimony.

IT IS SO ORDERED.

Dated this 13th day of December, 2013.

THOMAS S. ZILLY
United States District Judge

---

[2] ON Marine also challenges the scientific basis behind Ms. Raterman's opinion that amosite asbestos fibers remain after heating.  The Court has addressed this argument, as well as the admissibility of the materials upon which Ms. Raterman relies, in a separate order.  See Minute Order, docket no. 260.